**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **ROMULO ALBUQUERQUE;** | ) | CLERKS OFFICE US DISTRICT COURT<br>AT ROANOKE, VA<br>FILED<br><br>December 18, 2025<br><br>LAURA A. AUSTIN, CLERK<br>BY: _/s/ Erica Jones_<br>DEPUTY CLERK |
| **LISANDRA GARCIA;** | ) | |
| **BENICIO ALBUQUERQUE**, a minor, by and | ) | |
| through his mother and next friend, Lisandra | ) | |
| Garcia; and | ) | |
| **LORENZO ALBUQUERQUE**, a minor, by | ) | |
| and through his mother and next friend, | ) | |
| Lisandra Garcia; | ) | |
| | ) | |
| *Plaintiffs*, | ) | **Civil Action No. 7:25-CV-00928** |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **DELTA AIR LINES, INC., and** | ) | |
| | ) | |
| **KONINKLIJKE LUCHTVAART** | ) | |
| **MAATSCHAPPIJ N.V. COMPANY d/b/a** | ) | |
| **KLM ROYAL DUTCH AIRLINES,** | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>COMPLAINT</u>

Plaintiffs, Dr. Romulo Albuquerque ("Dr. Albuquerque"), Lisandra Garcia ("Mrs. Garcia"), Benicio Albuquerque ("Benicio"), a minor, by and through his mother and next friend, Lisandra Garcia, and Lorenzo Albuquerque ("Lorenzo"), a minor, by and through his mother and next friend, Lisandra Garcia (collectively, "Plaintiffs" or "Albuquerque Family"), by and through counsel, file this Complaint against Delta Air Lines, LLC ("Delta"), and Koninklijke Luchtvaart Maatschappij N.V. Company d/b/a KLM Royal Dutch Airlines ("KLM"), (collectively, "Defendants").

## I.     Introduction

This case involves Montreal Convention claims arising out of a bed bug infestation aboard a Delta and KLM international flight. The Albuquerque Family relied on Delta and KLM to provide them with safe and clean air transportation from Roanoke, Virginia to Belgrade, Serbia for their family vacation. While aboard a Delta and KLM flight across the Atlantic, the entire Albuquerque Family was bitten and injured by bed bugs that had infested the cabin of the plane. The Albuquerque Family developed raised and itchy welts, lesions, and rashes across their torsos and extremities, which ruined their family vacation and has caused humiliation, embarrassment, anxiety, discomfort, inconvenience, medical expenses, and loss of clothing and personal items. The Albuquerque Family now wishes to be compensated for their losses to the fullest extent permitted by the Montreal Convention.

## II.     Parties

1.      Plaintiffs are residents and citizens of the Commonwealth of Virginia.

2.      Plaintiffs reside in Roanoke, Virginia.

3.      Defendant Delta is a Delaware corporation with its principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia 30354.

4.      Delta is authorized to transact business in the Commonwealth of Virginia, and its registered office address is 100 Shockoe Slip Floor 2, Richmond, Virginia 23219.

5.      At all relevant times, Delta conducted substantial business in the Commonwealth of Virginia, including, but not limited to, operating flights to and from Roanoke-Blacksburg Regional Airport ("ROA").

6.      Defendant KLM is a foreign corporation with its principal place of business located at Amsterdamseweg 55, 1182 GP Amstelveen, Netherlands.

31052\0001\13055421v1

7.      KLM is authorized to transact business in the Commonwealth of Virginia, and its registered office address is 100 Shockoe Slip Floor 2, Richmond, Virginia 23219.

8.      At all relevant times, KLM conducted substantial business in the Commonwealth of Virginia.

9.      At all relevant times, Defendants operated as partners and joint venturers to provide trans-Atlantic air transportation for their passengers, including the Albuquerque Family.

10.     At all relevant times, Defendants were members of the "SkyTeam" airline alliance, a global airline alliance and aviation industry arrangement in which airlines agree to cooperate on a substantial level. As members of the SkyTeam alliance, Defendants agreed to share resources to provide passengers with air transportation from one destination to another, including from Roanoke, Virginia to Belgrade, Serbia.

11.     The SkyTeam alliance boasts that it "offers the most comprehensive priority services of any alliance, easy and efficient transfers, and the opportunity to earn and redeem miles across all member airlines."

12.     At all relevant times, Delta operated a "SkyMiles" frequent flyer program, whereby customers can earn points for use on Delta and KLM flights, as shown by the screenshot from Delta's website that is reproduced on the following page.

31052\0001\13055421v1



13.     Plaintiffs' Roanoke, Virginia to Belgrade, Serbia tickets were purchased through the SkyMiles program.

14.     At all relevant times, Defendants were parties to and operating under a joint "code-sharing agreement," a partnership and marketing arrangement in which one airline sells tickets for and places its designator code on a flight operated by another airline. Following Defendants' Joint Application for statements of authorization, the Delta/KLM code-sharing agreement was approved by Final Order of the Department of Transportation on February 6, 2006, permitting, among other things, "the display of Delta Air Lines, Inc.'s 'DL' designator code on flights operated by KLM Royal Dutch Airlines between (i) any point or points in the United States and any point or points in the Netherlands (either nonstop or via intermediate points), (ii) any points in the Netherlands in conjunction with foreign air transportation services held out by Delta Air Lines, Inc., (iii) any

31052\0001\13055421v1

point or points in the Netherlands or the United States and any point or points in any third country, and (iv) any points in third countries."

15. Delta and KLM entered into contracts of carriage with Plaintiffs and, at all relevant times, were in control of and were responsible for, Plaintiffs' safe, round-trip transport from ROA to Belgrade, Serbia, including the March 21, 2025 leg from Atlanta, Georgia to Amsterdam, Netherlands on Flight No. DL 9667, operated by KLM.

### III.    Jurisdiction & Venue

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331(a) because Plaintiffs' claims arise under the Convention for the Unification of Certain Rules for International Carriage by Air, concluded at Montreal, Canada, on May 28, 1999 ("Montreal Convention"), and all relevant laws applicable thereto, including, but not limited to, the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929 (the "Warsaw Convention"), as amended by the Protocol to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, done at The Hague on October 28, 1955 (the "Hague Protocol").

17. The Montreal Convention has been ratified by both the United States and Serbia, in accordance with Article 1 of the Montreal Convention. Defendants, as operators of trans-Atlantic international flights between members of the Montreal Convention, are subject to the provisions of the Montreal Convention.

18. This Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with the Commonwealth of Virginia such that the maintenance of the suit in Virginia does not offend traditional notions of fair play and substantial justice. Additionally,

31052\0001\13055421v1

Plaintiffs' claims arise directly and proximately out of Defendants' contacts with the Commonwealth of Virginia.

19.    Delta is licensed to do business in Virginia.

20.    Delta operates, advertises, and sells flights to and from multiple airports in Virginia, including ROA, Plaintiffs' place of departure.

21.    Delta employs citizens of Virginia.

22.    Delta encourages citizens of Virginia to take advantage of its SkyMiles program and credit card offerings through advertising campaigns.

23.    Plaintiffs' tickets were booked using the SkyMiles program.

24.    Delta entered into a contract for carriage with Plaintiffs to transport them from ROA to Belgrade, Serbia.

25.    KLM is licensed to do business in the Commonwealth of Virginia.

26.    KLM arranges, advertises, and sells flights to and from multiple airports in Virginia, including ROA, Plaintiffs' place of departure.

27.    Flights to and from ROA can be purchased on KLM's website.

28.    KLM, through its partnerships and code-sharing agreements, operates flights to and from multiple airports in Virginia, including ROA, Plaintiff's place of departure.

29.    KLM's membership in the SkyTeam alliance allows KLM to offer its services to passengers originating from ROA, including Plaintiffs.

30.    KLM's partnership and code-sharing agreement with Delta allows KLM to offer its services to passengers originating from ROA, including Plaintiffs.

31.    KLM's acceptance of SkyMiles allows KLM to offer its services to additional passengers originating from ROA, including Plaintiffs.

32.    KLM directly operates flights to and from Dulles International Airport in Dulles, Virginia.

33.    KLM employees citizens of Virginia.

34.    KLM has an office and cargo facility in Virginia.

35.    KLM, through its partnership and code-sharing agreement with Delta, entered into a contract for carriage with Plaintiffs to assist in transporting them from ROA to Belgrade, Serbia.

36.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2).

37.    Venue is also proper pursuant to Article 33 of the Montreal Convention.

## IV.    Facts

### A.    The Family Vacation & Plane Tickets

38.    The Albuquerque Family planned a vacation to Serbia to visit family and friends.

39.    Dr. Albuquerque, a frequent flyer with Delta, purchased four airline tickets through Delta's SkyMiles program.

40.    The tickets were for a round-trip, business-class flight from Roanoke, Virginia to Belgrade, Serbia.

41.    At the time of purchase, Plaintiffs' tickets had a face value of $8,800.00 USD.

42.    Rule 18(H) of Delta's Contract of Carriage states: "Some flight segments in your itinerary may be operated by airlines other than Delta pursuant to contractual codeshare arrangements with Delta that allow Delta to sell tickets for travel on flights operated by these Carriers ('Delta Codeshare Partners'). If you purchase a Delta ticket where Delta is the Marketing Carrier (your flight has a Delta flight number), your Contract of Carriage is with Delta regardless of the Operating Carrier."

43.     Delta was the contracting carrier for Plaintiffs' flights which are the subject of this action, as evidenced by Delta's two-letter airline designator code, "DL," on all tickets issued to Plaintiffs.

44.     On March 21, 2025, Plaintiffs were to depart ROA on Flight No. DL 5087, and arrive at Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia. From there, Plaintiffs were scheduled to take Flight No. DL 9667, operated by KLM, to Amsterdam Airport Schiphol, in the Netherlands. Finally, Plaintiffs were to take Flight No. DL 9189, operated by KLM, to their final destination of Belgrade, Serbia.

45.     KLM was the actual carrier for Flight Number DL 9667 and Flight Number DL 9189.

**B.     Flight No. DL 9667 & The Bed Bugs**

46.     On March 21, 2025, Plaintiffs passed the first leg of their journey from Roanoke, Virginia to Atlanta, Georgia without issue.

47.     Plaintiffs then boarded Flight Number DL 9667. The Albuquerque Family was seated in business class, located directly behind the first-class cabin, in seat numbers 12H, 12K, 14H, and 14K. The seats were arranged two seats to a row, with Mrs. Garcia and Dr. Albuquerque seated next to one another and their children, Benicio and Lorenzo, seated in the row directly behind them.

31052\0001\13055421v1



48.     Approximately two hours into the flight, Mrs. Garcia began feeling like bugs were crawling on her and that she was being bitten. It was at this point that she realized that bugs were crawling on her light-colored sweater.

49.     Dr. Albuquerque and Mrs. Garcia immediately alerted the flight attendants, who urged them to keep their voices down to avoid a "panic" on the airplane.

50.     As shown on the following page, Dr. Albuquerque and Mrs. Garcia took photos and videos of bugs crawling on Mrs. Garcia's sweater, and in the creases of Mrs. Garcia's and Dr. Albuquerque's seats.

31052\0001\13055421v1





51.    During the flight, everyone in the Albuquerque Family was bitten multiple times by the bugs that had infested the plane's cabin.

52.    The insects that repeatedly bit the Albuquerque Family during the course of their trans-Atlantic flight are commonly known as "bed bugs"—an example image is shown below.



53.     Bed bugs are micropredators that feed exclusively on the blood of their animal hosts.

54.     Bed bug bites cause red welts and rashes, which trigger an inflammatory response, discomfort, itching, loss of sleep, and anxiety.

55.     Prior to landing in Amsterdam, the flight attendants again urged Dr. Albuquerque and Mrs. Garcia not to tell anyone about the infestation because, if they did so, they would miss their connecting flight to Serbia.

56.     Plaintiffs do not know whether the flight attendants or other airline personnel ever told any other passengers about the infestation.

57.     Plaintiffs later learned that the flight attendants made a grievance against Defendant KLM for the infestation.

**C.      The Aftermath**

58.     When the flight finally landed in Amsterdam, the Albuquerque Family exited the plane and walked through the airport with all of their personal belongings in the plastic bags provided to them by the KLM flight attendants.

59.     The family subsequently boarded their connecting flight to Serbia, still feeling the discomfort and incessant itchiness of the bug bites.

60.     On or around the afternoon of March 22, 2025, the Plaintiffs finally arrived at their destination, where the Albuquerque Family had to wash their clothing in boiling water.

61.     During the trip, Dr. Albuquerque called upon a doctor-friend to learn how to treat the bed bug bites while still abroad. Dr. Albuquerque purchased topical solutions to assist with itchiness and discomfort. However, the recovery process was slow, and the bites produced large red welts on the children's necks, torsos, legs, and arms. Mrs. Garcia had similar rashes on her

12

lower back and legs, and Mr. Albuquerque had a rash on his neck and torso. Some of the
photographs of the rashes are reproduced on the following pages.





62.    Due to the visible marks on their skin and unrelenting itchy feeling, the Plaintiffs

were unable to enjoy their vacation. The marks did not begin to fade until after the Albuquerque

Family returned to the United States. To this day, Mrs. Garcia has scars on her lower back where she was bitten.

63.    On March 29, 2025, Dr. Albuquerque and Mrs. Garcia took their children to Physicians to Children, in Roanoke, Virginia, where they were given topical steroids and Benadryl. The doctors confirmed that the bites were caused by bed bugs and recommended that the family remediate the infestation by employing "bug bombs" in their home and car, and by washing their clothing in hot water, much of which the family had already done.

64.    The doctor also provided the children with notes indicating that they could return to school, noting that they were "not contagious" despite the visible bite marks and welts on their skin. As a direct and proximate result of the bite marks and rashes, Benicio and Lorenzo suffered great embarrassment at school.

65.    As a direct and proximate result of the repeated bed bug bites that occurred while the Plaintiffs were aboard the Delta and KLM flight, the Plaintiffs have suffered personal injuries, rashes, discomfort, itching, pain and suffering, inconvenience, anxiety, mental anguish, anger, fear, humiliation, and embarrassment. Plaintiffs incurred medical expenses to treat their injuries, and due to medical concerns, the family had to dispose of their infested clothing and personal items.

## VI.    Causes of Action

### COUNT ONE
**Montreal Convention**
*All Defendants*

66.    The preceding paragraphs are hereby incorporated as if fully set forth herein.

67.    On November 4, 2003, the United States signed, ratified and adopted as law the Montreal Convention, a multilateral international treaty which supplies rules governing international carriage by air. Because the transportation provided to the Albuquerque Family was

between points in two different nations and because both these nations are signatories to the Montreal Convention, the transportation at issue was international carriage as defined by Article 1(2) of the Convention, and the Convention is therefore applicable to this action pursuant to Article 1(1).

68.    Pursuant to Article 39 of the Montreal Convention, two classes of carriers are subject to liability for personal injury, "contracting carriers" and "actual carriers."

69.    Pursuant to Article 39 of the Montreal Convention, Delta was the contracting carrier for all of Plaintiffs' flights between the United States and Serbia, round-trip, including Flight No. DL 9667, operated by KLM, because Delta made a contract of carriage governed by the Montreal Convention with the Plaintiffs.

70.    Pursuant to Article 39 of the Montreal Convention, KLM was the actual carrier for Flight No. DL 9667 because KLM performed, by virtue of its authority from Delta, the leg of the trip from Atlanta, Georgia to Amsterdam, Netherlands.

71.    Pursuant to Article 40 of the Montreal Convention, Defendant Delta is subject to liability for the whole carriage contemplated in the contract, including Flight No. DL 9667.

72.    Pursuant to Article 40 of the Montreal Convention, KLM, the actual carrier, is subject to liability for the carriage which it performed.

73.    Pursuant to Article 17 of the Montreal Convention, a carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

74.    Plaintiffs were subjected to accidents, repeated bed bug bites, that occurred while they were aboard Flight No. DL 9667.

16

75.     The repeated bed bug bites constituted accidents within the meaning of Article 17(1) of the Montreal Convention because they were unexpected and unusual events or happenings in light of the relevant industry standards.

76.     As a direct and proximate result of the repeated bed bug bites that occurred while the Plaintiffs were aboard the Delta and KLM flight, Plaintiffs have suffered personal injuries, rashes, discomfort, itching, pain and suffering, inconvenience, anxiety, mental anguish, anger, fear, humiliation, and embarrassment. Plaintiffs incurred medical expenses to treat their injuries, and due to medical concerns, the family had to dispose of their infested clothing and personal items.

### VII.    Prayer for Relief

WHEREFORE, Plaintiffs pray that the Court award them compensatory damages against Defendants, jointly and severally, in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00), plus taxable costs, pre-judgment interest from March 21, 2025, post-judgment interest, and any such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES.**

                                        **ROMULO ALBUQUERQUE, LISANDRA GARCIA, BENICIO ALBUQUERQUE & LORENZO ALBUQUERQUE**

                                         */s/ Jared A. Tuck*

Matthew W. Broughton (VSB No. 25226)
Jared A. Tuck (VSB No. 98429)
GENTRY LOCKE
10 Franklin Road SE, Suite 900
P.O. Box 40013
Roanoke, Virginia 24022
Telephone:  (540) 983-9300
Facsimile: (540) 983-9400
broughton@gentrylocke.com
jtuck@gentrylocke.com
*Counsel for Plaintiffs*

31052\0001\13055421v1